UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHELLE BEEBE,

Plaintiff,

v.                                                    Civil Action No.  05-30182

WILLIAMS COLLEGE,

Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Williams College ("Defendant") submits this Memorandum of Law in Support of its Motion to Dismiss the claim asserted against it for breach of contract and the request for money damages for emotional distress.  The Complaint fails to allege facts sufficient to state a claim for breach of contract because Defendant's Support Staff Handbook does not constitute a contract. Additionally, the Complaint must be dismissed to the extent it seeks money damages for Plaintiff's alleged emotional distress since this type of relief is not available under the claim brought.

## PRELIMINARY STATEMENT

Plaintiff Michelle Beebe ("Plaintiff") has brought a two-count Complaint against Defendant.  The first count claims that Defendant violated the Family Medical Leave Act of 1993, § 101 *et seq.*, 29 U.S.C. § 2611 *et seq.* (2004) ("FMLA" or "Act") by the following alleged actions: (1) refusing to grant Plaintiff leave under the Act for her health condition in July and August 2003; (2) terminating Plaintiff for unscheduled work absences due to this health condition; (3) refusing to grant Plaintiff leave under the Act

for the health conditions of her children during the period "before January 1, 2002 until July 2003;" and (4) disciplining Plaintiff for unscheduled work absences she attributes to caring for her children with these ailments. Complaint ("Compl.") ¶¶ 45–50. For these alleged violations of the Act, Plaintiff seeks money damages for emotional distress. *Id.* at pt. VI. ("Prayers for Relief"). This part of her claim for relief must be dismissed since money damages for emotional distress are not available under the FMLA.

The second count alleges that Defendant breached its employment contract with Plaintiff when it failed to provide Plaintiff with family and medical leave in accordance with the policies outlined in its support staff handbook. *Id.* ¶52. Plaintiff's breach of contract claim must be dismissed in its entirety because it fails to state a claim upon which relief may be granted. Defendant emphasized that its support staff handbook did not grant employees any contractual rights. The contents of the handbook and the circumstances of its provision make clear that Defendant did not, and never intended to, enter into an employment contract with Plaintiff based upon the policies set out in the handbook.

## STATEMENT OF FACTS

For purposes of this motion only, we accept as true Plaintiff's version of the facts as alleged in the Complaint. Defendant employed Plaintiff for almost fifteen years until her discharge on August 4, 2003. Compl. ¶ 6. According to Plaintiff, her three children suffer from a range of ailments, including asthma, constipation and ear infections. *Id.* ¶¶ 9-11. She claims that she took unscheduled leaves from "prior to January, 2002 to July, 2003" because "she occasionally was needed to care for her three minor children." *Id.* ¶ 8. She states in her Complaint that she provided the notice required by "Defendant's absence policies" each time she left work to care for her children. *Id.* ¶ 12. On July 1,

2

2003, Defendant disciplined her for excessive use of unscheduled leave. *Id.* ¶ 15. Later

that same month, Plaintiff alleges that she contracted bronchitis and took additional

unscheduled leave totaling seven days. *Id.* ¶¶ 20, 32. She states that she hand-delivered

to her supervisors doctors' notes excusing her from work from July 28, 2003 until August

4, 2003. *Id.* ¶¶ 22, 25. When she finally returned to work on August 4, 2003, Defendant

discharged her. *Id.* ¶ 28.

In addition, Plaintiff indicates in her Complaint that Defendant has a policy

governing family and medical leave. *Id.* ¶ 37. She admits that she received a copy of this

policy as part of her handbook, *id.* ¶ 38, and complains that Defendant violated it by

denying her medical leave, *id.* ¶ 39. She then concludes that this alleged action amounted

to a breach of an employment contract between them. *Id.* ¶ 52.

## ARGUMENT

Even taking all facts and inferences in Plaintiff's favor, it is apparent from the

face of the Complaint that it contains at least two fatal errors. First, the Complaint fails

to allege facts sufficient to state a claim for breach of contract because it makes an

unwarranted assumption that Defendant's support staff handbook had contractual

significance. This assumption is belied by the handbook itself. Second, the Complaint

alleges violations of the Family Medical Leave Act of 1993, § 101 *et seq.*, 29 U.S.C. §

2611 *et seq.* (2004) ("FMLA") and then mistakenly seeks money damages for emotional

distress allegedly resulting from these claimed violations. The plain language of the

FMLA, however, makes clear that this type of relief is simply not available.

Plaintiff has not pleaded the facts necessary to state a claim upon which relief

could be granted for a breach of contract. The federal pleading requirement is "not

entirely a toothless tiger." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir. 1996).

"[O]nly well-pleaded facts are taken as true" and thus, "a complainant's unsupported conclusions or interpretations of law" are unacceptable. *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st Cir. 1993); *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992) ("a reviewing court is obliged neither to 'credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,' ... nor to honor subjective characterizations, optimistic predictions, or problematic suppositions") (citations omitted). Plaintiff makes an unwarranted assumption that Defendant's support staff handbook granted her contractual rights. The contents of the handbook and the circumstances of its provision make clear that Defendant did not, and never intended to, enter into an employment contract with Plaintiff based upon the policies set out in the handbook.

In addition, even if Plaintiff somehow could prove her FMLA claim, she seeks relief to which the statute does not entitle her. "Statutory interpretation must begin and end with the plain language of the statute if the language 'speaks with clarity to an issue.'" *Healy v. Henderson*, 275 F. Supp. 2d 40, 43 (D. Mass. 2003) (quoting *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992). The FMLA does not grant money damages for emotional distress. Therefore, her claim should be dismissed to the extent it seeks this type of relief.

I.    **PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT MUST BE DISMISSED BECAUSE DEFENDANT'S SUPPORT STAFF HANDBOOK DOES NOT CREATE ANY CONTRACTUAL RIGHTS.**

A. **Massachusetts Law Governs this Breach of Contract Claim.**

When deciding a claim that does not arise under the Constitution or the laws of the United States, a federal court applies the substantive law of the forum in which it sits. *Dykes v. DePuy, Inc.*, 140 F.3d 31, 39 (1st Cir. 1998) (citing *Klaxon v. Stentor Elec. Mfg.*

*Co.*, 313 U.S. 487, 496 (1941)). This principle also carries over to the federal court's

review of a state-law claim brought under supplemental jurisdiction. *Id.*; *see also Bi-Rite*

*Enters., Inc. v. Bruce Miner Co.*, 757 F.2d 440, 442 (1st Cir. 1985) (citing *United Mine*

*Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

 Here, Plaintiff has brought a state breach of contract claim attendant to her federal

Family Medical Leave Act claim. Accordingly, Massachusetts law governs the breach of

contract claim.

### B. Defendant's Buildings and Grounds Support Staff Handbook Is Part of the Complaint Since Plaintiff Relied on its Contents for Asserting the Breach of Contract Claim.

 For purposes of this motion, Defendant's Buildings and Grounds Support Staff

Handbook ("Defendant's Handbook" or "Handbook"), attached as Exhibit 1, is part of

the Complaint, even though Plaintiff neglected to attach a copy of it. *Beddall v. State St.*

*Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998); Buildings and Grounds Support Staff

Handbook, Williams College (6th ed. 1994 & Supp. 2000) [hereinafter Handbook].

When a plaintiff alleges in her complaint the contents of a document, which is central to

her claim, the document effectively merges into the complaint. *Beddall*, 137 F.3d at 17.

Consequently, a court may review such a document when ruling on a Rule 12 motion,

despite the plaintiff's failure to attach a copy of it to the complaint. *Id.*; *see also Fudge v.*

*Penthouse Intern., Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988) ("'when plaintiff fails to

introduce a pertinent document as part of his pleading, defendant may introduce the

exhibit as part of his motion attacking the pleading'") (quoting 5 Charles A. Wright &

Arthur R. Miller, *Federal Practice and Procedure* § 1327 at 489 (1969)); *Iwata v. Intel*

*Corp.*, 349 F. Supp. 2d 135, 141 (D. Mass. 2004). This "practical, commonsense

approach" ensures that plaintiffs do not "thwart the consideration of a critical document"

simply by omitting it from the complaint. *Beddall*, 137 F.3d at 16-17.

Plaintiff's breach of contract claim depends entirely on the legal status of Defendant's Handbook. In her Complaint, Plaintiff alleges that she received a copy of Defendant's Handbook. Compl. ¶ 38. She also specifically refers to one of Defendant's policies outlined in that Handbook, *id.*, and complains that Defendant did not comply with the policy, *id.* ¶ 39. She then erroneously concludes that this alleged policy violation constitutes a breach of contract. *Id.* ¶ 52. Given these allegations in her Complaint, the *Beddall* holding calls for treating Defendant's Handbook as part of the Complaint.

## C. Plaintiff's Breach of Contract Claim Must Fail Because Defendant's Handbook Does Not Constitute a Contract.

Defendant did not enter into an employment contract with Plaintiff simply by providing her with a copy of its Handbook. The mere existence of a staff handbook is not significant; rather, the contents of the handbook and the circumstances of its provision determine its legal status. *See O'Brien v. New England Tel. & Tel. Co.,* 664 N.E.2d 843, 847-48 (Mass. 1996) (noting that a "personnel manual may form the basis for an express contract," but "[o]f course, the provisions of a personnel manual on analysis may grant no rights"); *see also Jackson v. Action for Boston Cmty. Dev., Inc.,* 525 N.E.2d at 415-16 (citing factors and circumstances that should be part of analysis of handbook's legal status); *Hinchey v. Nynex Corp.,* 144 F.3d 134, 141 (1st Cir. 1998) (same).

Both the contents of Defendant's Handbook and the circumstances of its provision to Plaintiff make clear that Defendant did not, and never intended to, enter into an employment contract with Plaintiff based upon the policies set out in the Handbook. As explained further below, the Handbook does not constitute a contract as a result of the

following: (1) the express language, prominently placed in the Handbook, contradicting such a characterization; (2) the unilateral right of Defendant alone to modify the Handbook as often and as extensively as it desires; (3) the closer resemblance of the Handbook to a mere guidance document; (4) the absence of any Handbook provision indicating a term or duration of employment; and (5) the lack of negotiation between the parties as to the terms ultimately included in the Handbook.

First, Defendant's Handbook expressly and prominently indicates that the Handbook is not a contract. *See Ferguson v. Host Int'l, Inc.*, 757 N.E.2d 267, 272 (Mass. App. Ct. 2001). In *Ferguson*, the court reasoned that

> if the employer for whatever reason, does not want the manual to be capable of being construed by the court as a binding contract, there are simple ways to attain that goal. All that need be done is the inclusion in a very prominent position of an appropriate statement that there is no promise of any kind by the employer contained in the manual…

*Id.* (citing *Woolley v. Hoffmann-La Roche, Inc.,* 491 A.2d 1257, 1271 (N.J. 1985), *modified on other grounds*, 499 A.2d 515 (N.J. 1985)). Defendant's Handbook indicates that it is "not intended to constitute contractual undertakings by the College." Handbook at i. Defendant placed this important disclaimer on the first page of the Handbook (following the cover page), where it likely would catch the attention of its employees. *See Ferguson*, 757 N.E.2d at 272. This same page of the Handbook contains another disclaimer informing the employee that the College has the right to change any policy, practice or benefit as conditions require. Handbook at i. Additionally, Defendant reinforces its message by adding both disclaimers to the short, one-page form that is part of each Handbook and signed by employees acknowledging their receipt.

Acknowledgement of Receipt of Handbook, Handbook at Preface.

Second, Defendant alone retains the right to unilaterally modify the terms of the Handbook as often and as extensively as it desires. *See Jackson*, 525 N.E.2d at 415 (referring to employer's right to modify unilaterally the employee manual's terms); *O'Brien*, 664 N.E.2d at 848. Defendant's Handbook clearly indicates that "the College must reserve the right to modify, amend or terminate any policy, practice, or benefit as conditions warrant." Handbook at i. On the same page, Defendant adds that its Handbook is prepared in loose-leaf form to facilitate making unilateral changes to its policies and procedures. *Id.* No "meeting of the minds" occurs where one party has such a lop-sided advantage to alter terms at its own whim.

Third, Defendant's Handbook more closely resembles a guidance document rather than an employment contract. *See O'Brien*, 664 N.E.2d at 848 ("if the manual states that it provides only guidance as to the employer's policies, it may not create any enforceable rights") (citing *Jackson*, 525 N.E.2d at 415); *Joyal v. Hasbro, Inc.*, 380 F.3d 14, 19 (1st Cir. 2004), *cert. denied*, 125 S. Ct. 1325 (2005). Defendant describes the Handbook as "explain[ing] current practices, applicable policies and general benefit plans for College support staff." Handbook at i; Acknowledgement of Receipt of Handbook, Handbook at Preface (repeating same purpose on short-one-page form). The Handbook covers everything from a history of the College, Handbook at 2-3, to advisory committees, *id.* at 50-51, to the stickers required for on-campus parking, *id.* at 37. Its plainly explanatory nature contradicts any claim that it purportedly spells out contractual rights and obligations. Also, Defendant's on-going efforts to maintain awareness of current practices by distributing policy changes as they occur is consistent with an explanatory

document as opposed to one with contractual significance.

Fourth, Defendant's Handbook does not state a duration or term of employment and Plaintiff does not assert otherwise in her Complaint. *See Hinchey*, 144 F.3d at 142 (noting absence of term of employment as factor indicating document's non-binding nature); *Jackson*, 525 N.E.2d at 415;. The absence of such a term bolsters the conclusion that the Handbook did not carry contractual significance.

And fifth, Plaintiff and Defendant did not engage in any negotiations over the Handbook's terms. *See Jackson*, N.E.2d at 415 (finding "significant" lack of negotiation over terms of employee manual); *Hinchey*, 144 F.3d at 142. Plaintiff admits that she simply received a copy of the Handbook. Compl. ¶ 38. She does not indicate that she at any time negotiated for terms to be included in the Handbook she received. The Handbook hardly represents a bargained-for exchange given that the parties did not add, strike, or alter any terms to accommodate Plaintiff's unique situation.

### D. Even if a Contract Between the Parties Could Be Implied, Plaintiff Failed to Meet Her Obligation Under Such a Contract.

Even if we assume, for purposes of argument only, that the Handbook does constitute a contract, it was Plaintiff who failed to meet her obligations under the contract. This case simply does not abuse the public policy rationale espoused by courts implying an employment contract from the existence of an employee handbook. *O'Brien*, 664 N.E.2d at 848 (reasoning that there is a "reluctan[ce] to permit management to reap the benefits of a personnel manual and at the same time avoid promises freely made"); *Ferguson*, 757 N.E.2d at 272. Defendant does indeed have an "explicit policy governing family and medical leave that it provides to employees." Compl. ¶ 37. Defendant also agrees that Plaintiff did in fact "receive[] a copy of the employer's family

9

and medical leave policy as part of her employee handbook." Compl. ¶ 38. However, Defendant fully adhered to this policy. Plaintiff, by contrast, continually failed to do her part.

From the face of the Complaint, it is clear that Plaintiff did not follow the procedures for applying for a family and medical leave of absence as clearly laid out in the Handbook. In *O'Brien*, after implying the existence of a contract,[1] the court held that to assert her contractual rights, the employee had to make use of the procedures set forth in the employee manual or risk losing whatever rights the employee manual granted. 664 N.E.2d at 845, 849. The employee in *O'Brien* failed to follow the procedures, and this failure was, as a matter of law, fatal to her claim that the employer violated the terms of her employment. *Id*. at 849.

Defendant's Handbook clearly and repeatedly informs employees of the steps they must take to comply with Defendant's family and medical leaves of absence policy. This policy, repeated on several pages throughout the leave section of the handbook, indicates: "[w]ith the institution of the FMLA, forms requesting a leave of absence for illness or disability must be filled out and are available in the Personnel Office." Handbook at 66 (regarding leave of absence for illness or disability); *id*. at 70 (regarding leave of absence for maternity); *see also id*. at 71 (similar quote regarding leave of absence for serious illness of child). Furthermore, as part of these same policy explanations, the Handbook directs employees to read more about the family and medical

---

[1] The court implied a contract from the employee manual involved in that case due primarily to that manual's failure to include a reservation of the employer's right to change manual provisions or disclaimer of obligations. *O'Brien*, 664 N.E.2d at 848-49. Defendant's Handbook, on the other hand, does contain these features. *See e.g.* Handbook at i (reserving right to modify contents and adding disclaimer that Handbook does not constitute contractual undertakings).

leaves of absence policy at Appendix B.  Handbook at 66, 70, 71.  If they choose to
consult the Appendix, employees are reminded again that forms must be filled out to
utilize the policy:  "Where you are seeking a leave for your own serious health condition
or to care for a seriously ill child ..., you must provide the appropriate medical
certification before such a leave request will be granted."  Handbook, Appendix at B-1
(family and medical leaves of absence policy).  On the next page, it adds another
reminder:  "Please check with the Personnel Office for the appropriate forms and
necessary documentation to support all leave requests."  *Id*. at B-2.

       Plaintiff simply does not allege facts in her Complaint demonstrating her
compliance with these oft-repeated and clear instructions.  Plaintiff never alleges that she
submitted the required forms in connection with the absences she attributes to the
allegedly serious health conditions suffered by her and her children.  Instead, Plaintiff
contends that, in connection with her absences in July and August 2003, she left
voicemail messages and provided doctors' notes.  Compl. ¶¶ 17, 22, 25.  With respect to
absences she ascribes to her children's health conditions, she vaguely notes that "she
provided the notice required by the Defendant's absence policies."  Compl. ¶ 12.
Defendant's Handbook explains varying notice requirements for an "absence or
tardiness" policy, as well as numerous "leave of absence" policies for illness or disability,
maternity, adoption, paternity, military service, jury duty etc.  Handbook at 55-74.
Obviously, an employer would not have the same notice requirement for an employee
contemplating maternity leave as for an employee who catches a cold and wishes to stay
home from work.  Plaintiff's vagueness attempts to mask the fact that she did not provide
the forms required by Defendant's family and medical leaves of absence policy.

**II.    PLAINTIFF'S REQUEST FOR MONEY DAMAGES DUE TO HER ALLEGED EMOTIONAL DISTRESS MUST BE DISMISSED BECAUSE THE FMLA DOES NOT PROVIDE SUCH RELIEF.**

The Family Medical Leave Act of 1993, § 101 *et seq.*, 29 U.S.C. § 2611 *et seq.* (2004) ("FMLA" or "Act") and its accompanying regulations clearly set forth the relief an eligible employee may seek and receive. The plain language of the Act and its regulations, however, contain no reference to an award of damages for emotional distress resulting from a violation of the Act. Thus, Plaintiff's claim for monetary relief for emotional distress must be dismissed. Compl. at pt. VI (prayers for relief).

Section 2617 of the FMLA and Section 825.400 of the regulations explain the forms of relief available to an aggrieved employee. The law provides that an employer may be liable to an eligible employee for damages equal to the amount, with interest, of any wages, salary, employment benefits, or other compensation denied or lost as a result of a violation of the FMLA. 29 U.S.C. § 2617(a)(1)(A)(i)-(ii); 29 C.F.R. § 825.400(c). Alternatively, where there is no tangible loss, an eligible employee may recover actual monetary losses sustained by the employee due to the FMLA violation. 29 U.S.C. § 2617(a)(1)(A)(i)(II); 29 C.F.R. § 825.400(c). In cases where an employer did not act in good faith, an eligible employee may recover an additional amount equal to the sum of damages and interest as liquidated damages. 29 U.S.C. § 2617(a)(1)(A)(iii); 29 C.F.R. § 825.400(c). Additionally, an eligible employee may seek equitable relief, as appropriate, including employment, reinstatement, and promotion. 29 U.S.C. § 2617(a)(1)(B); 29 C.F.R. § 825.400(c). The plaintiff also may recover attorney's fees and costs. 29 U.S.C. § 2617(a)(3); 29 C.F.R. § 825.400(c). Nowhere does the statute or regulations mention damages for emotional distress.

Based on the plain language of the Act, numerous courts have denied requests for relief for emotional distress. *Rogers v. AC Humko Corp.*, 56 F. Supp. 2d 972, 979 (W.D. Tenn. 1999) (citing cases) ("This Court will join the long line of federal district courts holding that damages for emotional distress are not recoverable under the FMLA."). In an unpublished memorandum and order, this Court in *Szabo v. Trustees of Boston University*, No. Civ. A. 96-10806-GAO, 1998 WL 151272 * 6 (D. Mass. March 18, 1998), *aff'd on other grounds*, 181 F.3d 80 (1st Cir. 1998), attached as Exhibit 2, noted that a plaintiff who might be able to show only that she suffered from emotional distress and anxiety regarding her job status could not recover under the FMLA. It cited *McAnnally v. Wyn South Molded Products*, 912 F. Supp. 512, 513 (N.D. Ala. 1996) for the proposition that the FMLA does not reflect an intention to allow damages for mental distress. *Szabo*, 1998 WL 151272 at *6. *See also Brunelle v. Cyro Indus.*, 234 F. Supp. 2d 26, 27 n.2 (D. Me. 2002) ("It also appears that an employee is not entitled to recover emotional distress or punitive damages for an FMLA violation."); *Lloyd v. Wyoming Valley Health Care Sys., Inc.*, 994 F. Supp. 288, 291 (M.D. Pa. 1998) (reasoning from the plain language of the Act that if Congress intended the phrase "other compensation" to mean emotional damages and other "things which traditionally make up compensatory damages, there would have been no need to include (A)(i)(II) in the statute to provide for 'actual monetary damages' as they would be included in compensatory damages.").

The Plaintiff alleges that she suffered and continues to suffer emotional distress as a result of the written warning she received on July 1, 2003 and her discharge on August 4, 2003. Compl. ¶ 43, 44. She seeks money damages from Defendant for her alleged emotional distress. Compl. at pt. VI (prayers for relief). The law, however, simply does

13

not afford her this type of relief under the cause of action she has filed.

## CONCLUSION

The Complaint fails to allege facts sufficient to state a claim for breach of contract because Defendant's Handbook does not constitute a contract. Accordingly, this claim should be dismissed for failure to state a claim upon which relief may be granted. Additionally, the FMLA does not grant the type of relief that Plaintiff seeks so her claim for damages for her alleged emotional distress must be dismissed as well.

Williams College
By its attorney,

Judith A. Malone (BBO #316260)
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue at Prudential Center
Boston, MA 02199-7613
617.239.0100

November 23, 2005

CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the attorney of record for each other party by certified mail on November 23, 2005.

Judith A. Malone

14

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.