UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

FILED
IN CLERK'S OFFICE

2005 DEC -9 P 1:03

U.S. DISTRICT COURT
DISTRICT OF MASS.

CIVIL ACTION
NO. 05-30182-MAP

MICHELLE BEEBE,

    Plaintiff,

v

WILLIAMS COLLEGE,

    Defendant.

## THE PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

The Plaintiff, Michelle Beebe, respectfully submits this opposition to the Defendant's Motion to Dismiss. The Defendant's motion should not be allowed for the following reasons:

(1) The motion to dismiss is premature as to the contract claim. Under the liberal pleading requirements of Fed. R. Civ. P. 8, the Plaintiff has stated sufficient facts with which to make out a claim that the Plaintiff's employment was more than at-will – that is, that Ms. Beebe at least was promised greater job security than that provided by an at-will relationship and that Williams College breached that promise by not providing her with family medical leave. Much of the evidence of these promises is contained in the Defendant's Handbook (to adopt the Defendant's terminology), but the Plaintiff should not at this stage of the proceedings be limited to that document as the sole source of evidence of these promises. The Court should wait for discovery to conclude before entertaining any motion to dismiss the contract claim.

(2) Under the O'Brien decision, where the Supreme Judicial Court rejected a formulaic approach to determining whether an employer's manual creates a contract (the

approach used by the College in support of its conclusion that there is no contract), a contractual relationship did exist between Ms. Beebe and Williams College.

(3) If the Court does reach the contract issue now and concludes that there is a basis in the pleadings to support the contractual claim, the College's additional claim that Ms. Beebe has failed to meet her obligations under the contract is premature and must await further development of the facts.

(4) With regard to the emotional distress plea for relief, the motion is inapposite in that Rule 12(b)(6) is designed to test the sufficiency of a pleaded cause of action. It is not designed to rule out, at this stage of a case, a particular remedy as inappropriate.

(5) Although there is a split in authority on the issue of whether a plaintiff can obtain emotional distress damages in connection with a claim brought under the Family Medical Leave Act (FMLA), the Eighth Circuit has directly ruled that such relief is available and appropriate. This position, which properly serves the remedial purposes of the act, should be adopted by this Court.

## FACTS

The Plaintiff generally accepts the recitation of facts and characterization of the Complaint as set forth in the Defendant's memorandum of law in support of its motion to dismiss. Of course, all of the facts pleaded in the Complaint should be considered by the Court and should be taken as true.

In addition, the Plaintiff concurs that the Defendant's Handbook should be considered part of the Complaint for the purposes of the Defendant's motion.

## **ARGUMENT**

I. **THE COURT SHOULD NOT DISMISS THE PLAINTIFF'S CONTRACT CLAIM**

A. The Breach of Contract Claim Does Not Depend Entirely on the Legal Status of the Defendant's Handbook; But Depends on Other Facts That Have Yet to be Developed. Accordingly, the Viability of the Claim Is Not Ripe for Determination.

The College asserts that Ms. Beebe's contract claim depends entirely on the status of the Defendant's Handbook. If this proposition is true, then this Court is able to decide the viability of the claim at this early stage of the case. The proposition, however, is not true.

The existence of an employment relationship that provides security to an employee that is greater than that available in a strictly at-will employment – which provides no job security at all – may be dependent in large measure on the existence of an employment manual and the nature of its contents. Other facts, however, are critical to determining the nature of the employment relationship, such as how the handbook was provided to the employee, how often the handbook was provided, whether the employee signed the handbook, whether the employer engaged in other behavior the belied the existence of enforceable employment rights, whether benefit programs and/or insurance policies contained language that created agreements between the employer and the employee. "[T]he totality of the relationship between the employer and the employee (must be reviewed) to determine whether the relationship is at-will." Moriearty, Adkins, Rubin and Jackson, 45 Massachusetts Practice, Employment Law § 2.3 (p. 96)(2003).

Under the liberal pleading requirements of Fed. R. Civ. P. 8, the pleadings in this case are sufficient to make out a claim for breach of contract. It is as unnecessary as it is impossible for Ms. Beebe to plead all of the facts necessary to make out the totality of the employment relationship. Yet, before this Court can conclude that a contract claim has or has not been made out, all of the facts that make up that totality must be considered. It is obviously too early in the

3

case for those facts to be available now. Accordingly, the College's motion to dismiss is premature and should wait until after discovery is completed. Alternatively, if this Court believes that Ms. Beebe is limited by her pleadings to basing her contract claim solely on the Defendant's Handbook, then she asks leave to amend those pleadings.

B.  The Defendant's Handbook Altered Ms. Beebe's Status as an At-Will Employee By Creating Enforceable Promises.

A review of the Defendant's Handbook alone, nevertheless, reveals that in fact the presumptive at-will employment relationship between Williams College and its employees was altered thereby and in it the College made enforceable promises.

The Supreme Judicial Court addressed the question of whether an employer's manual creates enforceable promises on the part of the employer in O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 664 N.E.2d 843 (1996). In O'Brien, the Court extensively reviewed the viability of its earlier decision on the issue in Jackson v. Action for Boston Community Development, 403 Mass. 8, 525 N.E.2d 411 (1988), which in turn, had been interpreted as creating a laundry list of factors indispensable for the creation of a contract or the presence of which would preclude the conclusion that a contract had arisen. Some the factors listed in Jackson that militated the conclusion that there was not contract included that the manual was not the product of negotiation and that the employer had a unilateral right to modify the manual.

The Court categorically rejected Jackson's formulaic approach. O'Brien, 422 Mass. at 692, 664 N.E.2d at 847 ("the various circumstances discussed in the Jackson opinion are not a rigid list of prerequisites"). Instead, the O'Brien Court grounded its analysis on the following proposition: "[m]anagement distributes personnel manuals because it is thought to be in its best interests to do so. . . . Management expects that employees will adhere to the obligations that the

manual sets forth. Courts recently have been reluctant to permit management to reap the benefits of a personnel manual and at the same time avoid the promises freely made in the manual that employees reasonably believed were part of their arrangement with the employer." Id. at 694, 848.

Then, to drive home the point that consideration of laundry list of specific factors is a misguided approach for determining the existence of enforceable rights, O'Brien explicitly debunks several of the those factors. As to a lack of negotiation, the O'Brien Court discounted that factor entirely by stating that "[t]he fact that the . . . manual was not the subject of negotiation is neither significant nor surprising. Negotiation of the terms of a company-wide manual for nonunion employees is not likely and is not an essential precondition of the enforceability of the employer's obligations stated in the manual." Id. at 692, 848. As to the employer's unilateral right to modify the manual's terms, the O'Brien Court dispatched the significance of that factor by stating that the fact that "there was no bargained-for exchange, does not matter if employees in general would reasonably conclude that the employer was presenting the manual as a statement of the conditions under which employment would continue." Id. at 693, 848.

The O'Brien Court did agree that if a manual states that it only provides guidance as to the employer's policies, then enforceable rights may not be created. However, the Court made it clear that it will look to the totality of the manual to determine whether it provides guidance only. Id. at 693, 848. And, as the Appeals Court notes in Ferguson v. Host Int'l, Inc., 53 Mass. App. Ct. 96, 757 N.E.2d 267 (2001), if the employer wishes the manual to not be construed as a binding contract, it need only state, "in a very prominent position . . . that there is no promise of

any kind by the employer contained in the manual; that regardless of what the manual says or provides, the employer promises nothing . . ." Id. at 103, 272 (citation omitted).

Despite the lessons of O'Brien and Ferguson, the College nevertheless adopts the formulaic approach in arguing that no contract was created by its Handbook. The College cites to five factors that support its conclusion: (1) express language disclaiming the existence of a contract, (2) the College's unilateral right to modify the Handbook, (3) the characterization of the Handbook as a mere guidance document, (4) no term of duration of employment in the Handbook, and (5) the lack of negotiation between the parties as to the Handbook's terms.

The O'Brien opinion discredited the second and fifth reasons (lack of negotiations and unilateral right to modify). While it is true that the Handbook contains the disclaimer that it is "not intended to constitute contractual undertakings by the College," only first year law students would be so naïve (and eager) to assert that the meaning of the phrase is crystal clear. The College simply failed to plainly state that it was "promising nothing" – the phrase proffered in Ferguson. By using a legalism, rather than plain language, the College failed to effectively disclaim the existence of a contract.

The College's characterization of the Handbook as more closely resembling a guidance document than a contract is belied by the terms of the manual. The Handbook is repleat with declaratory statements of both employee and employer obligations. (The Plaintiff will reference the copy of the Handbook provided by the College and attached to its supporting memorandum as Exhibit 1.) For example, College policies and benefits are explicitly tied to the amount of time that the employee has worked at the College, as determined by the employee's "service date," page 11; employer's are required to serve a probationary period, page 11; some employees are required to be on-call, page 24; pay increases are normally provided each year, page 26; pay

checks are issued every Thursday, page 30; time reports are required to be submitted, page 30; vacation pay advances are permitted, page 31; standard work schedules are established, page 36; training can be required, page 46; and leave policies are clearly set forth, pages 54 – 74. That these provisions generally are binding and not merely offered as "guidance," is made clear by the plain meaning of the language used in the Handbook. When a discreet section of the manual is intended to be for guidance only, the Handbook so states. See page 27. Creating the above exception demonstrates that the intent of the College is for the Handbook to be binding.

Finally, the College asserts that the Handbook does not contain a term of employment. However, on page 10, under the category "Regular Employment," the Handbook states that "[r]egular employment status is assigned to a position when it is authorized for work on a regularly scheduled basis, either full or part-time, year-round or academic year, <u>with such employment continued from year to year</u> according to the needs of the College." This clause describes Ms. Beebe's employment status and is fairly read to indicate that her employment term was renewed yearly.

At the end of the day, the true test for whether enforceable promises are created by a manual (adopted by O'Brien) is set forth by the New Jersey Supreme Court in <u>Woolley v. Hoffman-La Roche, Inc.</u>, 99 N.J. 284, 299 (1985):

> Without minimizing the importance of its specific provisions, the context of the manual's preparation and distribution is, to us, the most persuasive proof that it would be almost inevitable for an employee to regard it as a binding commitment, legally enforceable, concerning the terms and conditions of his employment.

Id. at 694.

The Court in the O'Brien case concluded that it was reasonable for the employee there, as it was reasonable for Ms. Beebe here, to rely on the manual and "is entitled to whatever rights that the manual sets forth." Id.

C.  **If a Contract Does Exist, the College's Motion to Dismiss the Contract Claim on the Basis That Ms. Beebe Failed to Meet Her Obligations Under the Contract, Is Premature Because Such a Claim Involves Facts Beyond the Scope of the Pleadings.**

The College asserts that, assuming arguendo the existence of a contract, the failure of Ms. Beebe to follow the Handbook's procedures is fatal, as a mater of law, to her contract based claim. To make this argument, however, the College simply assumes that the facts will support its assertions that the College complied with the policies and Ms. Beebe did not. Yet, these are the very facts, yet to be fleshed out via discovery, that will be in controversy at trial. As such, the College's argument for dismissal is not now, and most likely never will be, ripe for resolution at the summary judgment stage of the case. It is beyond peradventure that it is not ripe for a 12(b)(6) motion.

## II.  THE COURT SHOULD NOT STRIKE THE PLAINTIFF'S PRAYER FOR RELIEF FOR EMOTIONAL DISTRESS DAMAGES ATTENDANT TO A CLAIMED VIOLATION OF THE FMLA

A.  **A Rule 12(b)(6) Motion is Not the Appropriate Tool With Which to Strike a Prayer for Particular Relief.**

Fed. R. Civ. P. 12(b)(6) allows a party to defend by motion the failure of a plaintiff "to state a claim upon which relief can be granted." The rule is designed to ferret out claims upon which there is no basis to proceed. The target of such a motion is a claim – a cause of action – not the remedy sought if that cause of action is established.

> [I]t need not appear that the plaintiff can obtain the particular relief prayed for in the complaint, as long as the district judge can ascertain from what has been alleged that some relief may be granted by the court.

8

5B Wright & Miller, Federal Practice and Procedure, Civil 3d § 1357 (2004).

The College does not assert that Ms. Beebe has failed to state a colorable claim under the FMLA. Rather, the College is attacking at this early stage of the proceeding a particular form of relief that Ms. Beebe seeks.

The attack is premature. Indeed, legal issues notwithstanding, it is possible that after discovery, the College may conclude that there is no factual basis for a claim of emotional distress. At that time, by way of a motion for summary judgment, or later, by way of a motion in limine, it is free to attempt to attack either the factual or legal sufficiency of the sought after relief. And, by appropriately waiting to reach the issue until after discovery is more or less complete, the Court may be provided with an opportunity to reach a conclusion that the relief sought is without a factual basis, obviating the need to reach the legal issue.

For these reasons, the Court should not decide the appropriateness of particular relief by way of a 12(b)(6) motion.

B. <u>Damages for Emotional Distress are Appropriate Under the FMLA.</u>

In <u>Duty v. Norton-Alcoa Proppants</u>, 293 F.3d 481 (8th Cir. 2002), the Court of Appeals concluded that a plaintiff may recover compensatory damages under the FMLA for emotional distress.

> Under the FMLA, an employer is liable for "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(1)(A)(i)(I). The district court properly instructed the jury to assess damages actually sustained by Duty, including lost wages and fringe benefits as well as compensation for "mental anguish, loss of dignity, and other intangible injuries.". . . Sufficient evidence supported the jury's compensatory damages award, including Duty's and his wife's testimony that Duty suffered emotionally after losing his job.

Id. at 496.

This conclusion finds support the Sixth Circuit's assertion, derived from the FMLA's legislative history, that "Congress intended the remedial provisions of the FMLA to mirror those in the FLSA (Fair Labor Standards Act)...." Frizzell v. Southwest Motor Freight, 154 F.3d 641, 644 (6th Cir. 1998)(citing S.REP.No. 103-3, at 35 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 37 ("[The FMLA's] enforcement scheme is modeled on the enforcement scheme of the FLSA.... The relief provided in FMLA also parallels the provisions of the FLSA. Section 107 provides for injunctive and monetary relief for violations of the act.")). Emotional distress damages may be obtained by a claim brought under the FLSA. Travis v. Gary Community Mental Health Center, 921 F.2d 108, 111 (7th Cir. 1990). Because FMLA's relief scheme parallels the FLSA and its remedial provisions mirror those of the latter act, it is reasonable to conclude that Congress intended that emotional distress be compensable under the FMLA.

The College cites several District Court cases that hold to the contrary. Indeed, the Sixth Circuit, in Brumbalough v. Camelot Care Centers, Inc., No. 04-5543 (Fed. 6th Cir., decided November 2, 2005)(not cited by the College, but directly on point), concludes that damages for emotional distress are not available under the FMLA. These cases conclude that the language of the statute, when afforded its plain meaning, simply does not provide for emotional distress damages.

However, in light of the Eighth Circuit's conclusion to the contrary, the meaning of statute's language perhaps is not so clear. When ambiguity is present, it is appropriate to look to legislative history for guidance as to Congress's intent. As discussed above, that intent is to provide a remedial statute that mirrors the enforcement scheme of the FLSA, a scheme that does provide for compensatory damages that include relief for emotional distress.

10

## REQUEST FOR ORAL ARGUMENT

The Plaintiff concurs in the Defendant's request for oral argument for the reasons stated therein.

## CONCLUSION

For the above stated reasons, the Plaintiff respectfully requests that this Court deny the Defendant's Motion to Dismiss in all respects.

Respectfully submitted,
MICHELLE BEEBE
By Her Attorney,

Dated: December 9, 2005

_____
Thomas J. McCormick, BBO # 561760
Heisler, Feldman & McCormick, P.C.
1145 Main Street, Suite 508
Springfield, MA 01103
(413) 788-7988
Fax (413) 788-7996

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the above document on the attorney of record for each other party by first-class mail on December 9, 2005.

_____
Thomas J. McCormick