UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHELLE BEEBE,

        Plaintiff,

    v.

WILLIAMS COLLEGE,

        Defendant.

Civil Action No.  05-30182

## JOINT PRE-TRIAL MEMORANDUM

Pursuant to Rule 16.5(D) of the Local Rules of the United States District Court for the District of Massachusetts and the Court's February 12, 2007 Procedural Order, the parties hereby submit the following Joint Pre-Trial Memorandum:

## I.    CONCISE SUMMARY OF THE EVIDENCE.

### 1.    Plaintiff Michelle Beebe.

The Plaintiff, Michelle Beebe, will offer evidence at trial that will show the following: (a) Ms. Beebe worked for Williams College for over 14 years, from October 17, 1988 until she was discharged by the college on August 4, 2003;  (b)  that overall each year she received good job evaluations, along with yearly raises, and she received several unsolicited notes and letters over the years praising her good work;  (c)  that she gave birth to a son in 1999 and to another son in 2000;  (d)  that these children had a series of serious health conditions that required Ms. Beebe to take leave from work to occasionally care for them at home;  (e)  that in years from 2001 to 2003, she took multiple, unpaid medical leave from work to care for her children;  (f) that Ms. Beebe's supervisor warned her on several occasions during this time period that the supervisor

believed that Ms. Beebe was taking excessive amounts of leave; (g) that on each occasion of leave, Ms. Beebe timely notified her supervisor of the need to take medical leave, and that the reason for the leave was to care for a sick child or children; (h) that the need for leave on each occasion was unforeseeable; (i) that on none of the above occasions, after receiving timely notice of Ms. Beebe's need for medical leave, did Williams College request, either orally or in writing, medical certification in support of the requested leave; (j) that, in fact, the College has a policy not to request doctor's documentation when an employee calls in sick, or calls in and informs her supervisor that she needs to stay home to care for a sick child; (k) that a substantial amount of the medical leave taken by Ms. Beebe qualified as leave under the Family Medical Leave Act (FMLA); (l) that the College improperly failed to credit that leave as qualified under the FMLA; (m) that the College discharged Ms. Beebe from her employment for taking the above described leave and thereby interfered with her rights under the FMLA.

The evidence further will show: (a) that the College gave Ms. Beebe a written warning for excessive absences on July 1, 2003; (b) that Ms. Beebe took medical leave from Thursday, July 24, 2007 through Friday, August 1, 2003 for a serious health condition; (c) that the need for this leave was unforeseeable; (d) that Ms. Beebe timely notified her supervisor of the need for leave on July 24, 2003 and July 25, 2003, and then provided two notes from doctors. The first note, dated July 27, 2003, was on a North Adams Regional Hospital form, stated that Ms. Beebe should be excused from work until July 31, 2003, and was signed by a doctor. This note was hand delivered to Ms. Beebe's supervisor on Monday morning, July 28, 2003. The second doctor's note, dated July 30, 2003, was on a Northern Berkshire Family Practice, P.C. prescription pad, stated that Ms. Beebe was "out of work until Aug 4th," and was signed by Dr. Kober. The second note was hand delivered to Ms. Beebe's supervisor on Wednesday, July 30,

2

2003; (e) that at no time from July 24, 2003 through the date of Ms. Beebe's termination on August 4, 2003, did Williams College request, either orally or in writing, medical certification in support of the requested leave; (f) that, in fact, the College has a policy not to request doctor's documentation when an employee calls in sick; (g) that Ms. Beebe received continuing treatment during the above period of time, and after August 4, 2003; (h) that the above described leave qualified as leave under the FMLA; (i) that the College improperly did not credit the above leave as qualifying under the FMLA, and, instead, terminated Ms. Beebe for taking the leave, thereby interfering with her rights under the FMLA.

With regard to damages, the evidence, through the Ms. Beebe's economic expert, Dr. Craig Moore, will show that Ms. Beebe is entitled to back pay, future pay, and compensation for the loss of back and future benefits she would have received had she not been illegally fired by the College. Dr. Moore has concluded that the present value of Ms. Beebe's economic damages amounts to $555,500.00.

Finally, the evidence will show that the Ms. Beebe is entitled to liquidated damages.

### 2.    **Defendant Williams College.**

The evidence will show that Williams College (the "College" or "Defendant") demonstrated "remarkable patience" with an unreliable employee who followed a consistent pattern of missing work, especially on Fridays and Mondays, for a period of more than two years despite receiving numerous formal and informal warnings from her supervisors regarding her excessive use of unscheduled leave. Plaintiff failed to appreciate the seriousness of her last written warning and rolled the dice by taking another unscheduled absence, within the same month as her last warning, assuming that she would be given yet another warning or a suspension without pay. She lost this gamble. The College terminated Plaintiff's employment

3

on August 4, 2003 citing Plaintiff's long history of attendance problems dating back to 2001 and beyond and her total failure to improve her attendance record even after receiving multiple warnings.

The College expects that the evidence will show that, after thirteen years in food services at the College, Plaintiff transferred to the College's Buildings and Grounds Department as a Custodian in April 2001. She immediately exhibited an attendance problem. By her own admission, she had problems with attendance throughout her employment at the College. The manager for the department, Beatrice Miles, noticed the pattern of absences and quickly addressed it by issuing a verbal warning together with Plaintiff's immediate supervisor, Peter Mason on September 13, 2001. During the next two years, both Miles and Mason continued to warn Plaintiff about her absences formally (on May 20, 2002 and March 17, March 25, and July 1, 2003) and informally. Miles made clear that Plaintiff's record of absenteeism could put her continued employment in jeopardy. Each time, Plaintiff acknowledged that she needed to improve her attendance and vowed to do so. Her attendance never improved, however. In 2001, she used 85 hours of sick leave. In 2002, she used 89.5 hours of sick leave and 129 hours of unpaid leave. From January until August 4, 2003, she used 73.5 hours of sick leave, and 176 hours of unpaid leave. Plaintiff never questioned the accuracy of the College's records as to her attendance.

Plaintiff's supervisors genuinely liked Plaintiff, enjoyed a good rapport with her, and thought her outgoing personality made her a good fit for the department, but they worried about the hardship her unscheduled absences had on her small custodial team of four and the department as a whole. They repeatedly tried to learn the source of her attendance problem and how they could assist in rectifying it. They offered to change her shift hours; asked her whether

there was anything they could do; asked her whether there was anything they needed to know; recommended that she contact the confidential employee assistance program; and suggested verbally and in writing that she speak with the College's benefits office concerning FMLA leave.

Other than changing the hours of her shift, however, Plaintiff rebuffed her supervisors' efforts to help her. Plaintiff repeatedly explained to her supervisors only that a majority of her absences stemmed from her children's daycare refusing to take the children even when they suffered from sniffles, a fever, diarrhea, ear aches and other ordinary, childhood ailments. Based on their conversations with Plaintiff, neither of her supervisors were led to believe that the children had any serious health conditions. The children's medical records confirm this to be the case. The record will show that while Plaintiff told supervisors that at least a portion of her unscheduled absences resulted from her needing to stay home to care for her sick child or children, the College's records indicate that on a number of these same occasions, their father took off from work the same day or a portion of the same day. Additionally, for the majority of the absences, the children were not seen by a doctor or other health care provider. She also claimed that between 2001 and 2003 she took some unscheduled and unspecified absences in order to care for a child, Nicholas Boucher, who has not lived with her since 2000.

The evidence will show that on July 1, 2003 Plaintiff met with Miles and received a written warning. The warning letter cautioned that her "excessive use of unscheduled time off is not acceptable and continued absenteeism will result in further disciplinary action up to and including termination." In this meeting and in her letter, Miles made clear that she expected an "immediate improvement in [Plaintiff's] attendance." During the meeting and in her letter, Miles specifically explained to Plaintiff that a failure to improve her attendance would result in further disciplinary action up to and including termination. At that meeting and in her letter,

Miles discussed the FMLA with Plaintiff and explained that it covered absences for an employee to care for a child with a serious health condition. Plaintiff told her supervisor she did not need it, but would look into it if she did. Miles instructed Plaintiff to speak anyway with Kris Maloney, Benefits Administrator for the College, about FMLA.

Plaintiff, at Miles' direction, did speak with Maloney of the College's benefits office on July 1, 2003 to discuss whether she qualified for FMLA leave due to her children's illnesses. Plaintiff explained that her son's pediatrician wanted to run tests because her son had not been feeling well. Maloney provided information to Plaintiff about taking family medical leave to care for a child with a serious illness and indicated that paperwork would need to be completed by the child's physician to determine whether the health condition was serious. Maloney also put together a packet of two sets of forms (one for each child), including the College's FMLA Request for Leave form, and the Department of Labor's Certification of Health Care Provider form along with an excerpt from the Federal Register describing what is meant by a "serious health condition." She and Plaintiff agreed that Plaintiff's husband would pick up the packet at the same time he picked up his paycheck stub. The receptionist, Kim Allard, confirmed that the packet left by Maloney was indeed picked up. Following that meeting with Maloney, Plaintiff also consulted the College's employee handbook concerning FMLA leave and, in particular, the section about intermittent leave.

Plaintiff, however, never completed the form to apply for Family Medical Leave, never met with her children's pediatrician to obtain the medical certification of their illnesses, never returned any medical certification forms to the benefits office, and never spoke with Maloney again or anyone in the benefits office, human resources or her supervisors in July 2003 concerning FMLA. Prior to July 2003, Plaintiff knew about FMLA. Twice before, in 1999 and

again in 2000, she applied for and received twelve weeks of FMLA leave from the College following the birth of each of her two minor children.

The evidence will show that just a little more than three weeks after meeting with Miles and receiving the written warning letter, Plaintiff returned to her familiar habit of taking extra long weekends. She left work around 1:00 in the afternoon on Thursday, July 24 complaining that she was sick with a headache. The next day, she called in sick for the whole day. She was not seen by her doctor nor was she taking any prescription medication. On Saturday, July 26 Plaintiff was seen by co-workers, and later admitted to, attending a fireworks display with her husband and family during which she testified that she drank a beer. Miles knew of Plaintiff's absences on July 24 and July 25, by no later than the morning of July 25 as it was her responsibility to find a floater to fill in for Plaintiff. Moreover, Miles had given explicit instructions to Mason to inform her immediately if Plaintiff took "any time" off after the July 1 written warning. Miles then spoke with Martha Tetrault of human resources, who in turn spoke with counsel, concerning Plaintiff's continued employment status. At that time, Miles believed she had given Plaintiff numerous opportunities to improve her attendance. Because Plaintiff "took time off again within the same month" of the written warning, Miles knew she had been unsuccessful in reaching this employee.

At around 10:00 in the evening on Sunday, July 27, Plaintiff went to the emergency room of a local hospital about a mile from her house complaining of a cough and feeling weak and tired. At the time of her visit, her temperature, blood pressure and pulse were all normal. A chest x-ray revealed that her lungs were clear with no fluid and her heart was normal in size. She was diagnosed with bronchitis with bronchospasm. The doctor did not place her on oxygen,

prescribe any oral steroids, nor did he order any pulmonary function testing. He treated her with Albuterol, urged her to stop smoking, and discharged her shortly thereafter in good status.

Plaintiff did not report to work for the week of July 28 through August 1, 2003. She went to the College twice to drop off doctors' notes excusing her from work until August 4. Neither of these notes provided any information concerning her alleged illness. In addition to these two visits to the College that week, she also went to go to the College to drop off plants she had grown for a coworker, Nancy Schneider. When she reported to work on August 4 for the first time since leaving early on July 24, Miles terminated her employment for excessive absenteeism.

The evidence will show that College's Support Staff Handbook sets forth both its policies on progressive discipline and Family Medical Leave. Indeed, the College describes the Handbook as "explain[ing] current practices, applicable policies and general benefit plans for College support staff." The Handbook contains a disclaimer on the very first page stating that it is "not intended to constitute contractual undertakings by the College." The Handbook also indicates that the College has the right to change any policy, practice or benefit as conditions require. These same messages appear on the short, one-page form that is part of each Handbook and signed by employees acknowledging their receipt. The Plaintiff has already testified that she could quit or be terminated at any time and that she never believed she was hired for any specific duration or term, nor that she could negotiate for more salary or benefits. She admits that she received the same wages and benefits as those provided to other support staff at her level and understood that only the College, not she, could make changes to policies listed in the Handbook. Her husband, who works for the College, similarly describes an at-will employment relationship with the College.

Since her termination in August 2003, the evidence will show that Plaintiff has remained unemployed despite her approximately thirteen years experience in food services at the College and more than two years experience as a custodian at the College. For the period after her termination from the College, she has been available to work a full-time shift from 9 a.m. until 5 p.m., and yet, she has not reported earning any income as wages, salaries, tips, etc. on her federal income tax returns for 2003 through 2006. By her own admission, she did not fill out any employment applications in 2003, 2004 or 2005, and has never applied for a position anywhere as a custodian. She only picked up one newspaper "from time to time" to learn about available job listings. Since her termination, she only has applied for positions at a Big Y in early 2006, at a Cumberland Farms in approximately September 2006, and at Angelina's sub shop days before her deposition in February 2007. In each of these cases, she was unsuccessful in obtaining employment. With respect to Angelina's sub shop, she specifically told the owner that she was terminated from her last job, but that she was "in the process of dealing with it." Although she remains unemployed, Plaintiff and her family incurred no disruption in their health insurance as Plaintiff's husband has been continuously employed by the College and eligible for benefits since at least the time of her termination.

## II.    FACTS ESTABLISHED BY PLEADINGS OR BY STIPULATION OR ADMISSIONS OF COUNSEL

1.    Plaintiff is an adult resident of Berkshire County who resides at 509 North Houghton Street, Clarksburg, MA 01247.

2.    The College is a not for profit institution of higher learning. It is located in Williamstown, Massachusetts 02167.

3.    The College is an employer covered by the FMLA.

4.    Plaintiff worked for the College from October 17, 1988 until August 4, 2003. At all relevant times, Plaintiff was an "eligible employee" covered by the FMLA.

5.  Plaintiff received and acknowledged receipt of a copy of the College's Food Service Staff Handbook on October 18, 1988.

6.  Plaintiff held the part-time, academic year position of Kitchen Assistant from October 17, 1988 until April 21, 1989. During this period, she received $5.60 per hour.

7.  Plaintiff held the full-time position of Snack Bar Attendant from April 22, 1989 until April 21, 2001. In this position, she was supervised by Carol Luscier. During this period, she received from $7.40 per hour to $11.66 per hour.

8.  Plaintiff held the full-time position of Custodian from April 22, 2001 until August 4, 2003. In this position, she was supervised by Beatrice Miles and Peter Mason. During this period, she received from $13.64 per hour to $15.13 per hour.

9.  Plaintiff was hired to work as a Custodian from 7:00 a.m. until 3:30 p.m. The College, however, accommodated her request to change her hours for childcare purposes to 7:30 a.m. until 4:00 p.m.

10. Since August 8, 1998, Plaintiff has been married to David Beebe, Sr.

11. David Beebe, Sr. has worked for Williams College since August 21, 2000. From 2001 until 2003, he was a floater for the Buildings and Grounds Department. He served in various full-time capacities during that period including performing custodial services for special functions and serving on the grounds crew. Beatrice Miles and Dave Fitzgerald supervised him.

12. Currently, the College employs David Beebe, Sr. full-time as a Second Class Fireman, Stationary Fireman. He receives health insurance, dental insurance, life insurance, and retirement benefits from the College

13. Plaintiff and David Beebe, Sr. have two minor children: David Beebe, Jr. and Daniel Beebe.

14. David Beebe, Jr. was born on May 7, 1999. Prior to his birth, Plaintiff applied for leave on December 31, 1998 on the forms supplied by the College. This request for leave was approved by the College. The College mailed a letter to her explaining that it was designating as Family Medical Leave the period from May 7, 1999 until September 7, 1999.

15. Daniel Beebe was born on November 8, 2000. Prior to his birth, Plaintiff applied for leave on June 14, 2000 on the forms supplied by the College. This request for leave was approved by the College. The College mailed a letter to her explaining that it was designating as Family Medical Leave the period from November 8, 2000 until February 8, 2001.

16. Plaintiff has another child from a previous marriage: Nicholas Boucher. He was born on December 25, 1986. Since 2000, he has continuously lived with his stepmother and biological father, Steve Boucher.

17. The College did not designate any of Plaintiff's absences from work in 2002 or 2003 as Family Medical Leave.

18. The College's attendance records indicate that on Friday, June 27, 2003, Plaintiff did not report to work claiming that one or more of her children were sick. David Beebe, Sr. took off from work this same day.

19. The College's attendance records indicate that on Thursday, May 1, 2003, Plaintiff did not report to work claiming that one or more of her children were sick. David Beebe, Sr. took off from work half of this same day.

20. The College's attendance records indicate that on Thursday, April 29 and Friday, April 30, Plaintiff did not report to work claiming that one or more of her children were sick. David Beebe, Sr. took off from work both of these same days.

21. The College's attendance records indicate that on Monday, October 7, 2002, Plaintiff did not report to work for three hours claiming that one or more of her children were sick. David Beebe, Sr. took off from work this same day.

22. The College's attendance records indicate that on Friday, August 30, 2002, Plaintiff did not report to work for four and a half hours claiming that one or more of her children were sick. David Beebe, Sr. took off from work this same day.

23. The College's attendance records indicate that on Wednesday June 19, 2002, Plaintiff did not report to work for 3 hours claiming that one or more of her children were sick. David Beebe, Sr. took off from work 3.5 hours on this same day.

24. In 2001, 2002 and 2003 Plaintiff received oral warnings from her supervisors concerning her absenteeism.

25. On July 1, 2003, Plaintiff met with her supervisor Beatrice Miles and received a written warning due to "her excessive use of unscheduled time off."

26. On or near July 1, 2003, Plaintiff, at the suggestion of Miles, spoke with Kris Maloney of the benefits office concerning FMLA leave.

27. On Thursday, July 24, 2003, Plaintiff left work early at about 1:00 p.m. complaining that she was sick and did not return for the rest of the day.

28. On Friday, July 25, 2003, Plaintiff called in sick and did not report to work at all.

29. On Saturday, July 26, 2003, Plaintiff attended a fireworks display in Pownal, Vermont with her husband, sister, aunt, uncle and two children.

30.     On Sunday, July 27, 2003, at 10:14 p.m. Plaintiff reported to the North Adams Regional Hospital.

31.     The hospital provided her with a note excusing her from work for three days.

32.     Plaintiff hand delivered the hospital's note to her supervisor on July 28, 2003.

33.     Plaintiff went to see Dr. Kober on Wednesday, July 30, 2003.

34.     Dr. Kober provided her with a note that stated "out of work until Aug 4th."

35.     On July 30 or July 31, 2003, Plaintiff hand delivered the note to her supervisor, Beatrice Miles.

36.     During the week of July 28 through August 1, Plaintiff went to the College on several occasions. She did not report to work at all that week.

37.     Plaintiff reported to work on August 4, 2003. She met with Beatrice Miles and Peter Mason. Miles terminated her employment and provided her with a letter.

## III.   CONTESTED ISSUES OF FACT.

### Plaintiff states that the following issues of fact are contested:

1.     Whether the Defendant can adduce a factual basis to support its contention that the Plaintiff failed to mitigate her damages by securing comparable employment.

2.     Whether the Defendant can adduce a factual basis in support of the propositions that: (1) it acted subjectively in good faith when it terminated Ms. Beebe in violation of the FMLA, and (2) there was a reasonable basis for believing that its conduct was lawful – so as to avoid a determination that liquidated damages are appropriate in this case.

3.     Whether there is a sufficient factual basis to establish that the Plaintiff and her children had serious health conditions, whether adequate notice was given to the Defendant by the Plaintiff of her need for medical leave for herself or to care for her children, and whether the Defendant interfered with the Plaintiff's rights under the FMLA.

### Defendant states that the following issues of fact are contested:

4.     Whether Nicholas Boucher suffered from one or more serious health condition(s) in 2002 or 2003.

5.     Which of Plaintiff's absences in 2002 and 2003 were attributed to an allegedly serious health condition of Nicholas Boucher.

6.    Whether Plaintiff provided notice to the College sufficient to make it aware that each of her absence(s) on account of Nicholas Boucher's health condition(s) was/were a potentially FMLA-qualifying reason.

7.    Whether Plaintiff was "needed to care for" Nicholas Boucher when he allegedly suffered from a serious health condition.

8.    Whether David Beebe, Jr. suffered from one or more serious health condition(s) in 2002 or 2003.

9.    Which of Plaintiff's absences in 2002 and 2003 were attributed to an allegedly serious health condition of David Beebe, Jr.

10.    Whether Plaintiff provided notice to the College sufficient to make it aware that each of her absence(s) on account of David Beebe's health condition(s) was/were a potentially FMLA-qualifying reason.

11.    Whether Plaintiff was "needed to care for" David Beebe when he allegedly suffered from a serious health condition.

12.    Whether Daniel Beebe suffered from one or more serious health condition(s) in 2002 or 2003.

13.    Which of Plaintiff's absences in 2002 and 2003 were attributed to an allegedly serious health condition of Daniel Beebe.

14.    Whether Plaintiff provided notice to the College sufficient to make it aware that each of her absence(s) on account of Daniel Beebe's health condition(s) was/were a potentially FMLA-qualifying reason.

15.    Whether Plaintiff was "needed to care for" Daniel Beebe when he allegedly suffered from a serious health condition.

16.    Whether Plaintiff suffered from one or more serious health condition(s) in 2002 or 2003.

17.    Which of Plaintiff's absences in 2002 and 2003 were attributed to an allegedly serious health condition suffered by her.

18.    Whether Plaintiff provided notice to the College sufficient to make it aware that each of her absence(s) on account of her own health condition(s) was/were a potentially FMLA-qualifying reason.

19.    Whether Plaintiff suffered from a serious health condition on July 24, 2003.

20.    Whether Plaintiff provided notice to the College sufficient to make it aware that her partial absence on July 24 on account of her own health condition was a potentially FMLA-qualifying reason.

21.    Whether Plaintiff suffered from a serious health condition on July 25, 2003.

22.    Whether Plaintiff provided notice to the College sufficient to make it aware that her absence on July 25 on account of her own health condition was a potentially FMLA-qualifying reason.

23.    Whether Plaintiff suffered from a serious health condition at any point from July 28, 2003 until August 1, 2003.

24.    Whether Plaintiff provided notice to the College sufficient to make it aware that her absence from July 28 until August 1, 2003 on account of her own health condition was a potentially FMLA-qualifying reason.

25.    When the College decided to terminate Plaintiff.

26.    Whether Plaintiff suffered any damages.

## IV.    JURISDICTIONAL QUESTIONS.

None.

## V.    QUESTIONS RAISED BY PENDING MOTIONS.

None.

## VI.    ISSUES OF LAW, INCLUDING EVIDENTIARY QUESTIONS.

### Plaintiff states the following issues of law:

1.    Whether the Defendant interfered with the Plaintiff's FMLA rights by terminating her employment because of absences that qualified for coverage under the Act.

2.    Whether the Defendant waived the ability to challenge the Plaintiff's claim of incapacity by its failure to exercise its right to request Ms. Beebe to provide medical certification from her health care provider of the medical need for the leave, at the time that each leave was requested.

3.    Whether Ms. Beebe's illness during the last week and one-half of her employment satisfies the substantive regulatory definition of "serious health condition."

4.    Whether Ms. Beebe's childrens' illnesses during approximately the last two years of her employment satisfy the substantive regulatory definition of "serious health condition."

5.    Whether the need for medical leave was unforeseeable.

6.    Whether Ms. Beebe provided the Defendant with adequate notice of her need for medical leave.

14

7.    Whether the Defendant has proven that liquidated damaged are not warranted in this case.

8.    Whether the Defendant has proven that the Plaintiff failed to mitigate her damages, and if so, to what extend her damage award should be reduced as a result of that failure.

9.    Whether the Defendant had a contract with the Plaintiff to provide the Plaintiff with leave qualified under the FMLA, and other leave, and, if so, whether the Defendant breached that contract by failing to grant the Plaintiff leave under the FMLA.

**Defendant states the following issues of law:**

1.    Whether the College's employee handbook constitutes an employment contract.

2.    If the College's employee handbook constitutes a contract, whether the College breached its contract with employee by failing to classify certain absences as FMLA-qualifying.

3.    Whether the College interfered with Plaintiff's exercise of the rights provided by FMLA.

4.    Whether the College discriminated against Plaintiff in violation of FMLA when it gave her a written disciplinary warning for excessive absenteeism on July 1, 2003.

5.    Whether the College discriminated against Plaintiff in violation of FMLA when it terminated her for excessive absenteeism on August 4, 2003.

6.    Whether, as part of her prima facie case of discrimination, Plaintiff has shown that she took FMLA-qualifying leave prior to July 1, 2003.

7.    Whether the Plaintiff waived her claim that her absences prior to July 1, 2003 were due to a serious health condition when she failed to complete and return either of the two copies of the FMLA Request for Leave form and Department of Labor Certification of Provider form provided to her by the Defendant on or about July 1, 2003.

8.    Whether, as part of her prima facie case of discrimination, Plaintiff has shown a causal connection between Plaintiff's disciplinary warning for excessive absenteeism of July 1, 2003 and any FMLA-qualifying leave taken by Plaintiff.

9.    Whether the College has articulated a legitimate nondiscriminatory reason for disciplining Plaintiff with a written warning when it states that it disciplined her for excessive absenteeism.

10.    Whether Plaintiff has shown that the College's stated legitimate nondiscriminatory reason for disciplining Plaintiff – excessive absenteeism – was a pretext for discrimination prohibited by the FMLA.

11. Whether, as part of her prima facie case of discrimination, Plaintiff has shown that she took FMLA-qualifying leave on July 24 and July 25, 2003.

12. Whether, as part of her prima facie case of discrimination, Plaintiff has shown that she took FMLA-qualifying leave from July 28 through August 1, 2003.

13. Whether, as part of her prima facie case of discrimination, Plaintiff has shown a causal connection between Plaintiff's termination for excessive absenteeism on August 4, 2003 and any FMLA-qualifying leave taken by Plaintiff.

14. Whether the College has articulated a legitimate nondiscriminatory reason for terminating Plaintiff when it states that it disciplined her for excessive absenteeism.

15. Whether Plaintiff has shown that the College's stated legitimate nondiscriminatory reason for terminating Plaintiff – excessive absenteeism – was a pretext for discrimination prohibited by the Family and Medical Leave Act.

16. Whether Plaintiff is entitled to liquidated damages.

17. Whether Plaintiff mitigated any damages suffered.

18. Whether Plaintiff's course of conduct after her termination was so deficient as to constitute an unreasonable failure to seek employment.

As Plaintiff only provided her list of exhibits and witnesses to the College on June 15, 2007, the day of the deadline for submission of this Pre-Trial Memorandum, the College reserves its right to supplement this Memorandum with any motions *in limine* concerning those exhibits and witnesses.

## VII.   REQUESTED AMENDMENTS TO THE PLEADINGS.

None.

## VIII.   ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION.

Plaintiff plans to move for partial summary judgment on liability. If Plaintiff moves for

partial summary judgment, the College will cross-move for partial summary judgment.

Specifically, the College will move for summary judgment of Plaintiff's breach of

contract claim because the College employed Plaintiff as an at-will employee and the College's

Support Staff Handbook did not constitute a contract which would alter that at-will relationship.

The College also will seek partial summary judgment of Plaintiff's claim that she is entitled to liquidated damages under 29 U.S.C. § 2617 because the record shows that the College did not act in bad faith. The College posted information about the FMLA; included information about the FMLA in the employee handbook; held training sessions with employees, including Plaintiff, during which it discussed FMLA and other benefits; informed Plaintiff verbally and in writing about FMLA; provided her with forms to apply for leave and obtain medical certification; granted FMLA leave to her on two occasions; disciplined her for excessive absenteeism over the course of more than two years; terminated her as a result of excessive absenteeism that continued despite receiving four warnings; and obtained the advice of counsel while considering her termination. Therefore, the College acted in good faith with reasonable grounds for believing that any of its acts or omissions did not violate 26 U.S.C. § 2615.

Additionally, the College will move for partial summary judgment on Plaintiff's failure to mitigate any damages she may have incurred. Plaintiff has remained unemployed during the four years since her termination from the College, reporting no wages or salary earned by her on her 2004, 2005 and 2006 federal income tax returns. By her own deposition testimony, she has applied for only three positions in four years. She did not complete any employment applications in 2003, 2004, or 2005. She further testified that she never applied for a position as a custodian even though that was the last position she held for more than two years. She applied for two positions in 2006 and one shortly before her deposition in 2007. She testified that she explained to one of these prospective employers that she was terminated from her last position, but that she was "in the process of dealing with it." Not surprisingly, she was not hired given this statement. This course of conduct was, as a matter of law, so deficient as to constitute an unreasonable failure to seek employment.

## IX.   THE PROBABLE LENGTH OF THE TRIAL.

Plaintiff expects that her case-in-chief will take approximately 4 days.  Defendant expects that its case-in-chief will take approximately 4 trial days.

## X.   NAMES, ADDRESSES AND TELEPHONE NUMBERS OF WITNESSES.

1.   **Plaintiff's Witness List**

A.   Michelle Beebe, 509 North Houghton Street, Clarksburg, MA 01247.

Plaintiff

B.   Craig L. Moore, Ph.D., 65B Hatfield Street, Northampton, MA 01060

Plaintiff's economic expert

C.   Stephen Payne, M.D., Northern Berkshire Family Practice, 820 State Road, North Adams, MA 01247

Plaintiff's medical conditions

D.   William H. Kober, M.D., Northern Berkshire Family Practice, 820 State Road, North Adams, MA 01247

Plaintiff's medical conditions

E.   Fred Landes, M.D., Emergency Department, North Adams Regional Hospital, North Adams, MA 01247

Plaintiff's medical conditions

F.   Michael L. Gerrity, M.D., Ambulatory Care Center, 77 Hospital Avenue, Suite 102, North Adams, MA 01247

Plaintiff's childrens' medical conditions

G.   Cindy Noel, Teacher, Williamstown Community Preschool, Main Street, Williamstown, MA 01267

Plaintiff's childrens' health and reasons for absences from daycare/preschool

H.   Susan Hanilon, Director, Williamstown Community Preschool, Main Street, Williamstown, MA 01267

Plaintiff's childrens' health and reasons for absences from daycare/preschool

I.    Francis J. Duda, M.D., Baystate Medical Center Children's Hospital, 3300 Main Street, Springfield, MA 01199

> Plaintiff's childrens' medical conditions

J.    Bonnie H. Herr, M.D., Williamstown Medical Associates, 197 Adams Road, Williamstown, MA 01267

> Plaintiff's medical conditions

K.    David Beebe, 509 North Houghton Street, Clarksburg, MA 01247

> Plaintiff's husband; Plaintiff's health, the health of Plaintiff's and his children; reasons for Plaintiff missing work

L.    Carol Luscier, Snack Bar Manager, Droppers House, Williams College, 15 Park Street, Williamstown, MA 01247

> Plaintiff's job performance and employment record

M.    Barry Hirsch, M.D., 2 Medical Center Drive, Springfield, MA (413) 794-2270

> Plaintiff's childrens' medical conditions

N.    A. Angelides, M.D., 2 Medical Center Drive, Springfield, MA (413) 794-2270

> Plaintiff's childrens' medical conditions

O.    Thomas Powers, Center for Development Economics, Williams College

> Plaintiff's job performance and employment record

P.    Pamela D. Turton, Center for Development Economics, Williams College

> Plaintiff's job performance and employment record

Q.    Kris Maloney, Williams College

> Defendant's policies regarding implementation of the FMLA

R.    Beatrice Miles, Williams College

> Plaintiff's job performance and requests for medical leave

S.      Heather, last name unknown, Berkshire Commons Nursing Home, North Adams, MA

                Potential employer of Plaintiff, who in the recent past received a negative employment reference for the Plaintiff from the Defendant

2.   **Defendant's Witness List**

A.      Martha Tetrault, Director of Human Resources, B & L Building, Williams College, 100 Spring Street, Suite 201, Williamstown, MA 01267.

B.      Kris Maloney, Benefits Administrator, B & L Building, Williams College, 55 Sawyer Library Drive, Williamstown, MA 01267.

C.      Beatrice Miles, Director of Facilities Services, Service Building, Williams College, 60 Latham Street, Williamstown, MA 01267.

D.      Peter Mason, Supervisor of Custodial Services, Service Building, Williams College, 60 Latham Street, Williamstown, MA 01267.

E.      John Rose, Main, Pownal, Vermont 05261.

F.      Brent Siciliano, 1 Whiteley Avenue, North Adams, MA 02147.

G.      Kim Allard, 1538 Massachusetts Avenue, North Adams, MA 01247.

H.      Nancy L. Segreve, MA, CRC, Occupational Resource Network, 305 North Main Street, Andover, MA 01810.

I.      Fred Landes, M.D., Emergency Department, North Adams Regional Hospital, North Adams, MA 01247.

J.      Aaron B. Waxman, M.D., Ph.D., Assistant Physician in Medicine Pulmonary and Critical Care Unit, Massachusetts General Hospital, 55 Fruit Street, Bulfinch 148, Boston, MA 02114.

**XI.   PROPOSED EXHIBITS.**

1.   **Plaintiff's Exhibit List.**

A.      All Attendance Calendar's for Michelle Beebe (1988 – 2003)

B.      All Attendance Calendar's for David Beebe (2000 – 2003)

C.      All Medical Records for Michelle Beebe

D.      All Medical Records for David Beebe, Jr.

E.    All Medical Records for Daniel Beebe

F.    All Medical Records for Nicolas Beebe

G.    The entire Williams College Staff Handbook (Sixth Edition)

H.    Report of Dr. Craig Moore

I.    Letter from Beatrice Miles to Michelle Beebe: Written warning (July 1, 2003) WIL 00266.

J.    Letter from Beatrice Miles to Michelle Beebe: Termination (August 4, 2003) WIL 00265.

K.    Letter from Martha Tetrault to Michelle Beebe dated September 18, 2003

L.    Memo from Rich Davis to Martha Tetrault with attached Time Reports WIL 00221, 00222, 00223

M.    Compilation of hours worked and leave taken  WIL 0732, 0733

N.    Note To Whom It May Concern from Cindy Noel dated 8/21/03

O.    All Documents from Michelle Beebe's Personnel File, including but not limited to:

    i.    Letter from Carol Luscier to To Whom It May Concern dated October 19, 2001

    ii.    Email from Tom Powers to Peter Mason dated September 16, 2002

    iii.    Note to Shelly from Bea dated September 17, 2002

    iv.    Letter from Pamela Turton to Shelly Beebe dated June 6, 2003

    v.    Letter from Martha Tetrault to Michelle Beebe dated May 16, 2003

    vi.    . Note to Shelly from Carol and Helen dated February 21, 2000

    vii.    Yearly performance evaluation 1999-2000

    viii.    Letter from Martha Tetrault to Michelle Beebe dated June 4, 1999

    ix.    Yearly performance evaluation 1997 – 1998

    x.    Yearly performance evaluation 1994 – 1995

2.    **Defendant's Exhibit List.**

A.    Plaintiff's 2001 Attendance Calendar, WIL 0728.

B.    Plaintiff's 2002 Attendance Calendar, WIL 00727.

C.    Plaintiff's 2003 Attendance Calendar, WIL 00267.

D.    Notations of Beatrice Miles: Plaintiff's 2003 Attendance, WIL 00268, 00269.

E.    Spreadsheet of Personnel Information for Plaintiff (2002-2003) WIL 00732, 00733.

F.    2002 Attendance Calendar of David Beebe, Sr.

G.    2003 Attendance Calendar of David Beebe, Sr.

H.    Note of Beatrice Miles: Plaintiff's Termination (August 4, 2003) WIL 00358, 00359.

I.    Note of Beatrice Miles: Written Warning to Plaintiff for Attendance Problem (July 1, 2003) WIL 00360, 00361.

J.    Note of Beatrice Miles: Attendance (July 31, 2003) WIL 00362, 00363.

K.    Note of Beatrice Miles: Verbal Warning to Plaintiff for Attendance Problem (March 17, 2003) WIL 00364.

L.    Note of Beatrice Miles: Verbal Warning to Plaintiff for Attendance Problem (March 25, 2003) WIL 00715.

M.    Note of Beatrice Miles: Verbal Warning to Plaintiff for Attendance Problem (May 20, 2002) WIL 00365.

N.    Note of Peter Mason:  Verbal Warning to Plaintiff for Attendance Problem (September 13, 2001) WIL 00366.

O.    Letter from Beatrice Miles to Plaintiff: Written Warning (July 1, 2003) WIL 00266.

P.    Letter from Beatrice Miles to Plaintiff: Termination (August 4, 2003) WIL 00265.

Q.    Letter from Martha Tetrault to Jules Peon, Department of Labor: Plaintiff's Termination (August 11, 2003) WIL 00344, 00355.

R.    Letter from Martha R. Tetrault to Plaintiff: Grievance (September 18, 2003) WIL 00262, 00263.

S.    Letter from Carol Marks, Marc Field, and Damon Reed to Plaintiff: Grievance (November 11, 2003) WIL 00242, 00243.

T.    Memorandum from Kris Maloney to Martha Tetrault: Meeting with Plaintiff about FMLA (August 6, 2003) WIL 00287.

U.    Email from Kris Maloney to Martha Tetrault: Receipt of FMLA Package (August 28, 2003) WIL 00288.

V.    FMLA Posting by the College, WIL 00572, 00573.

W.    Department of Labor's Certification of Health Care Provider Form, WIL 00281.

X.    Federal Register's Definition of "Serious Health Condition" (January 6, 1995) WIL 00283, 00284.

Y.    Annual Custodial Training Day Schedule (March 28, 2002) WIL 00285, 00286.

Z.    Williams College FMLA Request for Leave Form, signed by Plaintiff (December 31, 1998) WIL 00278.

AA.   Letter from Rosemary K. Moore to Plaintiff: Confirming Approval of FMLA Leave (June 9, 1999) WIL 00062, 00063.

BB.   Williams College FMLA Request for Leave Form, signed by Plaintiff (June 14, 2000) WIL 00275.

CC.   Letter from Rosemary K. Moore to Plaintiff: Confirming Approval of FMLA Leave (November 9, 2000) WIL 00042, 00043.

DD.   Letter from Corlis L. Sellers, Regional Administrator for Wage and Hour Division, U.S. Department of Labor, to Patricia Higgins, Esq. (January 18, 2007).

EE.   Williams College Support Staff Handbook: (Sixth Edition) WIL00574-00702.

FF.   Support Staff Handbook Acknowledgment form (August 10, 1994), WIL00508.

GG.   Letter from Richard Bullett, Director of Personnel, to Plaintiff: Employment Offer (October 17, 1988), WIL00134-00135.

HH.   Medical Records from Dr. Payne: Plaintiff, PAY00001-00092.

II.   Medical Records from North Adams Regional Hospital: Plaintiff.

23

JJ.     Progress Note from Northern Berkshire Family Practice (July 30, 2003)
        WIL 00299.

KK.     Progress Note from Northern Berkshire Family Practice (August 5, 2003)
        WIL 00300.

LL.     Northern Berkshire Family Practice (July 30, 2003), WIL00417.

MM.     North Adams Regional Hospital Note (Jly 27, 2003), WIL00367.

NN.     Medical Records from Dr. Gerrity: David Beebe, Jr., GER00130-00223.

OO.     Medical Records from Dr. Duda:  David Beebe, Jr.

PP.     Medical Records from Dr. Gerrity: Daniel Beebe, GER00001-00128.

QQ.     Medical Records from Dr. Duda:  Daniel Beebe.

RR.     Medical Records from Dr. Gerrity: Nicholas Boucher, GER00224-00295.

SS.     Records from Williamstown Community Daycare: David Beebe, Jr.

TT.     Records from Williamstown Community Daycare:  Daniel Beebe.

UU.     College's Job Description for Custodian, WIL00423.

VV.     Letter from Plaintiff to Beatrice Miles: Custodian Position (March 19,
        2001), WIL00448-00449.

WW.     Planner of Martha Tetrault, WIL00735-00748.

XX.     Statements from Division of Unemployment Assistance, 2003, 2004.

YY.     Page of Joint Income Tax Returns: David and Michelle Beebe, 2001,
        2002, 2003, 2004, 2005, 2006

ZZ.     IRS Form W-2: David Beebe, 2004, 2005, 2006.

AAA.    Plaintiff's Deposition Transcript (February 2, 2007).

BBB.    Plaintiff's Answers to the College's First Set of Interrogatories (December
        12, 2006).

CCC.    Plaintiff's Answers to the College's Second Set of Interrogatories (March
        17, 2007).

DDD.    David Beebe, Sr.'s Deposition Transcript (February 2, 2007).

EEE.    Vocational Expert Report of Nancy L. Segreve, MA, CRC.

FFF.    Medical Expert Report of Aaron B. Waxman, M.D., Ph.D.


Respectfully submitted,                      Respectfully submitted,
Michelle Beebe                               Williams College
By her attorney,                             By its attorneys,


/s/ Thomas J. McCormick /PM                  /s/ Patricia M. Mullen
Thomas J. McCormick (BBO #561760)            Judith A. Malone (BBO #316260)
HEISLER, FELDMAN & MCCORMICK PC              Patricia M. Mullen (BBO # 663318)
1145 Main Street, Suite 508                  EDWARDS ANGELL PALMER & DODGE LLP
Springfield, MA 01103                        111 Huntington Avenue
413-788-7988                                 Boston, MA 02199-7613
tmccormick01060@yahoo.com                    617.239.0100
                                             jmalone@eapdlaw.com
                                             pmullen@eapdlaw.com

Dated: June 15, 2007


CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the ECF system and will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


/s/ Patricia M. Mullen