UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-30182-MAP

MICHELLE BEEBE,
                Plaintiff,

v.

WILLIAMS COLLEGE,
                Defendant.

**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF THE DEFENDANT'S MEDICAL EXPERT AND SUPPORTING MEMORANDUM**

Pursuant to this Court's Final Scheduling Order, dated June 22, 2007, the Plaintiff, Michelle Beebe, respectfully moves this Court in limine to exclude the testimony of the Defendant's medical expert, Dr. Waxman.

Dr. Waxman's testimony should be excluded because the Defendant did not exercise its right to request Ms. Beebe to provide medical certification from her health care provider of her need for medical leave <u>at the time</u> that she requested the time off (circa the end of July, 2003). By choosing not to exercise this right and, therefore, failing to timely request certification, the Defendant waived this right and is now precluded from challenging with medical testimony at trial whether Ms. Beebe's leave request qualifies under the Family Medical Leave Act (FMLA).

In like fashion, the Defendant did not exercise it right to request Ms. Beebe to provide medical certification of her children's serious health conditions during 2001

through 2003 each time that she took leave to care for them, and so waived its right challenge, through a medical expert, that the children were not incapacitated.

I. TESTIMONY REGARDING THE PLAINTIFF'S SERIOUS HEALTH CONDITION

Undisputed Facts

Ms. Beebe missed work from Thursday, July 24, 2003, for the final 3 hours of her shift starting at 1:00 p.m., through Friday, August 1, 2003. Joint Pretrial Memorandum (Joint Memo), II. Stipulations, ¶¶ 27, 28, & 36. She told her supervisor was she sick when she left early on July 24th. Id. She called in sick on July 25th. Ms. Beebe went to the local hospital's emergency room on Sunday evening, July 27th. Id. at ¶ 30. She followed up on Wednesday, July 30, 2003, with a visit to the office of her primary care physician, Dr. Payne, and saw his partner, Dr. Kober. Id. at ¶ 33.

During the above leave, Ms. Beebe provided two doctor's notes to her supervisor each excusing her from work. Joint Memo at ¶¶ 31, 32, 34 & 35. The first note, dated July 27, 2003, was from Dr. Landes, a North Adams Regional Hospital emergency room physician, and was written on hospital letterhead. The note stated that Ms. Beebe was excused from work until July 31, 2003. Id. at ¶ 31. Ms. Beebe hand delivered the note her supervisor on Monday, July 28, 2003. The second note, dated July 30, 2003, was from Dr. Kober and was written on the doctor's office's letterhead. This note stated that Ms. Beebe was excused from work until August 4th. Id. at ¶¶ 33 – 34. Ms. Beebe hand delivered this note to her supervisor on or about July 30, 2003.

Upon Ms. Beebe's return to work on August 4, 2003, the Defendant terminated her employment and gave her a letter stating that she had had an unacceptable amount of absences from work. Id. at ¶ 37.

At no time during or after the above absences did Ms. Beebe's supervisors request that she provide any additional certification or doctor's documentation in support of her medical absence. Beatrice Miles, Ms. Beebe's supervisor, testified at her deposition as follows:

> Q. . . . whenever you became aware of that note [the note from Dr. Landes] do you recall making either a request directly of Shelly or passing the request through Mr. Mason that Shelly provide further medical information in support of this note excusing her from work?
>
> A. I'm sure that I did not do that. That is not something we require of our employees. We do not, unless instructed through the benefits office to get documentation from a doctor for leave policies, whatever they may be. It is not something I require or ask my employees to do.
>
> . . .
>
> A. Not from me, no. As I said, we don't request doctor's documentation.
>
> Q. All right. In the normal course of a request for sick leave or sick time.
>
> A. Right. Not when they call in, nor when they come back.

Beatrice Miles Deposition, at 58 – 60, a copy of which is attached as Exhibit 1.

The Defendant does not assert that it ever requested medical certification from Ms. Beebe at the time that she took unforeseeable leave for her own illnesses or for her children's illnesses.

Argument

The Defendant seeks to introduce the testimony of Dr. Waxman in support of the proposition that Ms. Beebe's doctors erred in excusing her from work during the last week of July, 2003. For example, in his report, based solely on a review of Ms. Beebe's

3

medical records, Dr. Waxman states that Ms. Beebe was appropriately treated in the emergency room on July 27, 2003 for a post viral condition and was discharged home with appropriate medications. He went on to conclude, however, that "this does not suggest a chronic condition or a condition that requires ongoing treatments from a health care provider." He goes to say that "I do not find anything in the medical record that supports a diagnosis of any serious chronic health condition." Report of Dr. Waxman, dated April 18, 2007, a copy of which is attached as Exhibit 2.

Yet, Dr. Landes, the emergency room physician, excused Ms. Beebe from work until July 31st and then Dr. Kober, after seeing Ms. Beebe on July 30th, excused her until August 4th and continued her on the course of antibiotics originally prescribed.[1] Dr. Waxman would testify, in essence, that Ms. Beebe was not incapacitated and did not need to miss work; in other words, that Ms. Beebe did not suffer from a serious health condition covered by the FMLA. If the Court allows Dr. Waxman's testimony, the Defendant will be permitted to challenge the medical conclusions of Ms. Beebe's doctors well after the fact of her illness.

---

[1] It is interesting to note that Dr. Payne, Ms. Beebe's primary care physician, saw her again on August 5th, and continued her on the same antibiotics that she had been taking for over a week. At his deposition, Dr. Payne testified that during his examination of Ms. Beebe on August 5th, "she still sounds like she has a lower respiratory infection or bronchitis, because I hear wheezing and rhonchi. So I re-treat her with another antibiotic at that point." Payne Deposition at 111. When asked whether it was reasonable that she had been kept out of work during week prior to his seeing her on the 5th, Dr. Payne testified that: "Yeah. I generally – if a person has a lower respiratory tract infection, I don't like to send them back to work until their lungs are cleared. I'm worried about them deteriorating so I try to keep them out." Id. at 113. Finally, when asked if he had an opinion as to whether Ms. Beebe should have remained out of work for some period of time from August 5th onward, had she still been employed, he answered: "Yes. With the wheezing, that would have been reasonable." Id. at 114. Copy attached as Exhibit 3.

The scheme of the FMLA does not provide for this kind of post hoc attack on the health care providers who treated the employee at the time – it does not countenance a battle of medical experts at trial on the issue of whether the employee suffered from a serious health condition at the time that she requested and took medical leave.  The "statutory scheme is designed to have medical determinations made by health care providers, rather than the courts."  Sims v. Alameda-Contra Costa Transit Dist., 2 F.Supp.2d 1253, 1261 (N.D.Cal. 1998).

If the employer doubts that an employee has a serious health condition, its recourse is to the certification process set out in the regulations.  "An employer who does not believe that its employee suffers from incapacity due to illness, or otherwise doubts its employee's qualifications for FMLA leave, has several statutory and regulatory remedies."  Wheeler v. Pioneer Developmental Services, Inc., 349 F.Supp.2d 158, 168 (D. Mass. 2004).

> Once an employee gives notice, and the circumstances suggest that the employee's request may involve FMLA leave, it becomes the employer's obligation to inquire further in order to determine if the requested leave qualifies for FMLA protection.  (Citations omitted).
>
> The employer has the right under the FMLA to require that the employee support her request for leave with medical certification issued by the employee's health care provider.  29 U.S.C. § 2613(a)(2004); 29 C.F.R. 825.305(a).  To exercise this right, the employer must give a written notice of a requirement for medical certification each time the employer requires it, 29 C.F.R. 825.305(a), and must advise the employee of anticipated consequences of the employee's failure to provide adequate certification, 29 C.F.R. 825.305(d).  In general, the employer must request certification at the time the employee gives notice or, in cases of unforeseen leave, within two days after leave commences.  29 C.F.R. 825.305(c).  Once requested, the employee must provide a copy of such certification to the employer.  29 U.S.C § 2613(a)(2004).

Wheeler, 349 F.Supp.2d at 166.

The above statutory remedies are perfectly clear. The consequences, if an employer fails to available itself of the remedies, are equally clear. "An employer who chooses not to exercise these rights waives them and is precluded from challenging the propriety of the employee's leave request at a later trial." Id.

> Congress did not allow an employer to deny a leave request without using the statutory procedures, and then argue in court after engaging in civil discovery that the certification presented by the employee did not accurately present the employee's medical condition.

Sims at 1263.

The Eighth Circuit in Thorson v. Gemini, Inc., 205 F.3d 370 (8th Cir. 1999), further clarified that an employer's failure to seek certification waives only its right to contest the medical opinions of the Plaintiff's doctors. In Thorson, the court expressly separated the issue of whether a "serious health condition" was proved into objective and subjective components. The objective component focuses on whether the ailment in question met 'bright line' statutory requirements. For example, the court in Thorson concluded that the Plaintiff in that case, who had visited her doctor twice within a week and whose illness exceeded three calendar days, met the requirements of the objective standard set forth in the regulations. Thorson, 205 F.3d at 377. It may well be the case that an employer may always challenge, including at summary judgment or trial, whether the employee met the objective criteria for a serious health condition.

The court then turned to the more subjective issue of whether Plaintiff's illness actually rendered her incapacitated, as her own physician's notes suggested.

> Thorson was absent for more than three days with notes from her physician, written on two different occasions within that period of absence, indicating that she was not to work. At that point, Gemini became obligated either to count

6

> Thorson's absence as FMLA leave under the 'serious health condition' provision or to follow the procedures set out in the statute and the regulations designed to prevent employee abuse of the Act.... That is, Gemini could have initiated the FMLA's certification process before summarily terminating Thorson. Had it done so, it may have been able to determine that Thorson did not have a 'serious health condition' within the meaning of the FMLA."

Id. at 381.

The posture of the Thorson case was an appeal of a grant of summary judgment as to liability for the Plaintiff. The employer relied on its own medical expert, as the employer does here, who evaluated the Plaintiff's condition many months (years, in the case at bar) after the employee's termination and for the purposes of the litigation. The expert in that case concluded that there was no obvious reason that the employee should have missed work; that it, that in his opinion, she was no incapacitated. The Circuit Court agreed with the District Court's conclusion that "[i]n the face of the contemporaneous notes from Thorson's physician indicating that she was not to work, . . . Gemini cannot show, with its evaluations made long after the fact, that there remains a genuine issue of material fact on the question of Thorson's capacity to do her job." Id. at 382.

The above decisions, and others, have made clear that the certification procedures are the exclusive means by which an employer can challenge the medical facts underlying an employee's certification. *See also,* Miller v. AT&T, 60 F.Supp. 574, 580 (S.D.W.Va. 1999), *affirmed*, 250 F.3d 820 (4th Cir. 2001). The failure of the Defendant in this case to invoke the statutory certification scheme after receiving notice of the need for

leave from the Plaintiff deprives it of the right to challenge the substance of the certification via its own expert offering his post hoc opinion.

Finally, it may be the case that the Defendant's supervisor did not believe that the Plaintiff was ill enough to miss work during the last week of July, 2003. However, "employers may not substitute their personal judgments for the test in the regulations or the opinions of the health care providers of employees . . . to determine whether an employee is entitled to FMLA leave for a serious health condition." Id. (quoting 60 Fed.Reg. 2180, 2235 (1995). The proper recourse for the Defendant was to challenge the Plaintiff's doctors' conclusions at the time of her illness, not today.

II.  TESTIMONY REGARDING THE SERIOUS HEALTH CONDITION OF THE PLAINTIFF'S CHILDREN

The Defendant also intends to offer testimony from Dr. Waxman that neither of the Plaintiff's two sons, Daniel or David Beebe, suffered from any serious chronic health conditions during the period from January 2002 through July 2003.

The following facts are not in dispute: The Defendant did not designate any of the leave that Ms. Beebe took during the above time frame as Family Medical Leave. Joint Memo, Stipulation No. 17. The Defendant issued a written warning to the Plaintiff on July 1, 2003 because of the excessive use of unscheduled time off. Joint Memo, Stipulation No. 25.

On several occasions during 2002 and 2003, Ms. Beebe missed more than three consecutive days of work and the Defendant was on notice on each of those occasions that the reason for her absence was to care for her sick children. For example, the Defendant's attendance records show that Ms. Beebe took unexcused leave from work on

8

June 25, 26, 27 and 30, 2003, a period of more than three days. Those records also show that Ms. Beebe notified the Defendant that the reason for the absences was because she had "sick children" at home and she had to care for them. The attendance records also show that Ms. Beebe took a sick day on March 10, and then unexcused leave for March 11, 12, 13, and 14, 2003. Again, the records reveal that Ms. Beebe notified the Defendant that the reason for the absences was because she had "sick children" at home and she had to care for them.

For at least the above two described periods of time, the Defendant was on timely notice that the leave taken by Ms. Beebe might qualify as FMLA leave. She was absence for than three days and the absences were due to the fact that her children were sick. For the same reasons articulated above, once the Defendant was on notice that the leave might qualify under FMLA, it had an obligation to inquire further, if it so chose, by requesting that Ms. Beebe provide medical certification from the children's health care provider that the children had a serious health condition and that they required assistance from Ms. Beebe. The Defendant does not contend that it requested medical certification during or after either of the above two periods of absences. Accordingly, the Defendant has waived the right to challenge whether the children's illnesses during these periods were incapacitating.

The only testimony that Dr. Waxman has to offer regarding the children's illnesses is his opinion that neither child had a serious chronic health condition during those periods – that is, that neither child was incapacitated. Because the Defendant the right to challenge this point, Dr. Waxman's testimony should be excluded.

Conclusion

9

For the above reasons, the expert testimony of Dr. Waxman should be excluded in all respects.

|  |  |
|---|---|
|  | Respectfully submitted,<br>THE PLAINTIFF, MICHELLE BEEBE,<br>By her attorney, |
| Dated: July 2, 2007 | ____/s/ Thomas J. McCormick____<br>Thomas J. McCormick, BBO# 561760<br>Heisler, Feldman, McCormick<br>    & Garrow, P.C.<br>1145 Main Street, Suite 508<br>Springfield, MA  01103<br>Ph. (413) 788-7988<br>Fax (413) 788-7996<br>tmccormick01060@yahoo.com |

CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF).

　　/s/ Thomas J. McCormick_____
　　　　Thomas J. McCormick